No. 24-13429-HH

In the
United States Court of Appeals
for the Eleventh Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

PERRY JOHNSON,
*Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 2:03-CR-31-JES-KCD-2

## BRIEF OF THE UNITED STATES

ROGER B. HANDBERG
United States Attorney

SEAN SIEKKINEN
Assistant United States Attorney
Appellate Division

JULIA R. KAPUSTA
Assistant United States Attorney
Appellate Division
Florida Bar No. 1002292
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
February 4, 2025                    (813) 274-6000

*United States v. Perry Johnson*
No. 24-13429-HH

## Certificate of Interested Persons and Corporate Disclosure Statement

In addition to the persons identified in the Certificate of Interested Persons and Corporate Disclosure Statement in Perry Johnson's principal brief, the following persons have an interest in the outcome of this case:

1. Albritton, A. Brian, former United States Attorney;

2. Bentley, A. Lee, III, former United States Attorney;

3. Dudek, Hon. Kyle C., United States Magistrate Judge;

4. Hoppmann, Karin, former Acting United States Attorney;

5. Kapusta, Julia R., Assistant United States Attorney;

6. Klindt, James R., former Acting United States Attorney;

7. Lopez, Maria Chapa, former United States Attorney;

8. Muldrow, W. Stephen, former Acting United States Attorney;

9. O'Neill, Robert E., former United States Attorney;

10. Perez, Paul I., former United States Attorney;

11. Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division; and

12. Siekkinen, Sean, Assistant United States Attorney.

No publicly traded company or corporation has an interest in the outcome of this appeal.

C-1 of 1

# Statement Regarding Oral Argument

The United States does not request oral argument.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement......... C-1

Statement Regarding Oral Argument ................................................................. i

Table of Contents ............................................................................................. ii

Table of Citations ........................................................................................... iv

Statement of Jurisdiction ............................................................................... ix

Statement of the Issue ...................................................................................... 1

Statement of the Case ...................................................................................... 1

    *Course of Proceedings* ................................................................................ 1

    *Statement of the Facts* ............................................................................... 3

        A.    Offense Conduct ................................................................... 3

        B.    Sentencing ............................................................................ 6

        C.    Johnson's Most Recent Compassionate-Release Motion ........ 7

    *Standard of Review* ................................................................................. 11

Summary of the Argument ............................................................................. 11

Argument and Citations of Authority ........................................................... 12

    The district court did not abuse its discretion in denying Johnson's 18
    U.S.C. § 3582(c)(1)(A) motion for compassionate release ................... 12

        A.    The district court did not abuse its discretion in finding that
            compassionate release is not warranted because Johnson
            remains a danger to the community ...................................... 16

ii

       B.     The district court did not err in ruling that Johnson had shown no extraordinary and compelling reason for compassionate release ................................................................................. 19

Conclusion ........................................................................................ 28

Certificate of Compliance with Type-Volume Limitation

Certificate of Service

# Table of Citations

**Cases**

*Batterton v. Francis*,
   432 U.S. 416 (1977) ...................................................................... 20

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
   467 U.S. 837 (1984) ...................................................................... 27

*Cuozzo Speed Techs., LLC v. Lee*,
   579 U.S. 261 (2016) ...................................................................... 27

*Daniels v. United States*,
   809 F.3d 588 (11th Cir. 2015)..................................................... vii

*Dillon v. United States*,
   560 U.S. 817 (2010) ...................................................................... 21

*Dorsey v. United States*,
   567 U.S. 260 (2012) ................................................................23, 25

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ...................................................................... 24

*Loper Bright Enterprises v. Raimondo*,
   144 S. Ct. 2244 (2024)................................................................... 27

*PDVSA US Litig. Tr. v. LukOil Pan Americas LLC*,
   65 F.4th 556 (11th Cir.), *Cert. denied*, 144 S. Ct. 343 (2023)....................... 20

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*,
   484 U.S. 365 (1988) ...................................................................... 26

*United States v. Amedeo*,
   487 F.3d 823 (11th Cir. 2007)....................................................... 18

*United States v. Andrews*,
   12 F.4th 255 (3d Cir. 2021) .......................................................22, 25

*United States v. Bentley*,
   No. 23-13848, 2024 WL 3311704 (11th Cir. July 5, 2024) ........................ 17

*United States v. Bryant*,
   996 F.3d 1243 (11th Cir. 2021)................................................................. 14

*United States v. Butler*,
   852 F. App'x 503 (11th Cir. 2021)............................................................ 18

*United States v. Chen*,
   48 F.4th 1092 (9th Cir. 2022) ................................................................. 22

*United States v. Crandall*,
   25 F.4th 582 (8th Cir. 2022) ................................................................... 22

*United States v. Giron*,
   15 F.4th 1343 (11th Cir. 2021)............................................................11, 15

*United States v. Harris,*
   989 F.3d 908 (11th Cir. 2021)................................................................. 13

*United States v. Jackson*,
   847 F. App'x 792 (11th Cir. 2021)........................................................... 17

*United States v. Jenkins*,
   50 F.4th 1185 (D.C. Cir. 2022)...........................................................22, 24

*United States v. Johnson*,
   134 F. App'x 284 (11th Cir. 2005)............................................................ 2

*United States v. LaBonte*,
   520 U.S. 751 (1997) ................................................................. 20–21, 25, 27

*United States v. Maumau*,
   993 F.3d 821 (10th Cir. 2021)................................................................. 23

*United States v. McCall*,
   56 F.4th 1048 (6th Cir. 2022) ..........................................................22, 24, 26

*United States v. McCoy*,
   981 F.3d 271 (4th Cir. 2020)................................................................... 22

*United States v. McGee*,
   992 F.3d 1035 (10th Cir. 2021)............................................................... 22

*United States v. McMaryion*,
  No. 21-50450, 2023 WL 4118015 (5th Cir. June 22, 2023) ....................... 22

*United States v. Mead Corp.*,
  533 U.S. 218 (2001) ................................................................................ 27

*\*United States v. Rutherford*,
  120 F.4th 360 (3d Cir. 2024)................................................................22, 25

*United States v. Ruvalcaba*,
  26 F.4th 14 (1st Cir. 2022)....................................................................... 22

*United States v. Shettler*,
  No. 21-10484, 2022 WL 620311 (11th Cir. Mar. 3, 2022)......................... 18

*United States v. Thacker*,
  4 F.4th 569 (7th Cir. 2021) ....................................................................22–23

*United States v. Tinker*,
  14 F.4th 1234 (11th Cir. 2021)................................................................. 15

*Waldman v. Conway*,
  871 F.3d 1283 (11th Cir. 2017)................................................................ 20

**Statutes**

1 U.S.C. § 109 ......................................................................................23–24

5 U.S.C. § 706(2)(A)................................................................................. 27

18 U.S.C. § 2 .......................................................................................... 1–2

18 U.S.C. § 924(c) .....................................1, 7–9, 19–20, 22–23, 25

18 U.S.C. § 924(c)(1)(A) ......................................................................... 1–2

18 U.S.C. § 924(c)(1)(A)(iii)........................................................................ 6

18 U.S.C. § 924(c)(1)(B)(ii) ........................................................................ 7

18 U.S.C. § 924(c)(1)(C) ........................................................................... 23

18 U.S.C. § 924(c)(1)(C)(ii) (2004) ......................................................... 6–7

18 U.S.C. § 2113(a) ................................................................ 1

18 U.S.C. § 2113(d) ................................................................ 1

18 U.S.C. § 3231 ................................................................. ix

18 U.S.C. § 3142(g) ..........................................................11, 16

18 U.S.C. § 3142(g)(1) ........................................................ 16

18 U.S.C. § 3142(g)(2) ........................................................ 17

18 U.S.C. § 3142(g)(3) ........................................................ 17

18 U.S.C. § 3553(a) ......................................................9, 13, 15

18 U.S.C. § 3582 ................................................................. 2

18 U.S.C. § 3582(c) ........................................................13, 26

18 U.S.C. § 3582(c)(1) ..................................................... ix, 26

18 U.S.C. § 3582(c)(1)(A) ................................. 8, 11–16, 20–21, 27

18 U.S.C. § 3582(c)(1)(A)(i) ........................... 13, 21, 24–26

18 U.S.C. § 3582(c)(2) ........................................................ 26

26 U.S.C. § 5861(d) ............................................................. 2

26 U.S.C. § 5871 ................................................................. 2

28 U.S.C. § 994(a) .............................................................. 21

28 U.S.C. § 994(t) ..........................................................14, 20

28 U.S.C. § 994(u) .............................................................. 26

28 U.S.C. § 1291 ................................................................ ix

28 U.S.C. § 2255 ................................................................. 2

**Rules**

Fed. R. App. P. 4(b) ............................................................. ix

**Other Authorities**

First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018).........................7, 23

USSG §1B1.13 ...............................................................................1, 14–15

USSG §1B1.13(a)(2) .............................................................................15–17

USSG §1B1.13(b)(1)–(5) ........................................................................... 14

USSG §1B1.13(b)(6) ........................................................ 8–9, 12, 14, 20–21, 27

## Statement of Jurisdiction

This is an appeal from a final decision of the United States District Court for the Middle District of Florida in a criminal case in which the court denied Perry Johnson's 18 U.S.C. § 3582(c)(1) motion for compassionate release. That court had jurisdiction. *See* 18 U.S.C. §§ 3231 and 3582(c)(1). The court entered its order denying Johnson's motion on September 18, 2024, Doc. 196, and he timely filed a notice of appeal on October 1, 2024, Doc. 197. *See* Fed. R. App. P. 4(b); *Daniels v. United States*, 809 F.3d 588, 589 (11th Cir. 2015) (under the prison-mailbox rule, a pro se prisoner's filing is deemed filed on the date it is delivered to prison authorities for mailing, and, absent contrary evidence, this Court assumes that the prisoner delivered the filing to prisoner authorities on the date he signed it). This Court has jurisdiction over this appeal. *See* 28 U.S.C. § 1291.

## Statement of the Issue

Did the district court abuse its discretion in denying Johnson's motion for compassionate release after determining he had failed to show an extraordinary and compelling reason for a reduction to his sentence and considering the policy statement in USSG §1B1.13? (Johnson's Issues I and II)

## Statement of the Case

Johnson is serving a life sentence for committing two armed robberies and detonating pipe bombs in the early 2000s. In this appeal, he challenges the district court's denial of his 2024 compassionate-release motion based on the length of his sentence, which he characterized as "unusually long," given the changes in law concerning "stacked" 18 U.S.C. § 924(c) sentences.

### *Course of Proceedings*

In 2003, a grand jury charged Johnson with two counts of armed bank robbery, in violation of 18 U.S.C. §§ 2, 2113(a), and 2113(d) (counts one and three); two counts of using and carrying a firearm during and in relation to a crime of violence and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A) (counts two and four); using and carrying destructive devices, i.e., explosive pipe bombs, in relation to a crime of violence and possessing said destructive devices in further of a crime

1

of violence, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A), and 924(c)(1)(C)(ii) (count five); and possessing unregistered explosives, in violation of 26 U.S.C. §§ 5861(d) and 5871 (count six). Doc. 21.

The jury convicted Johnson of all counts, Doc. 121; Doc. 149 at 711; at sentencing, however, the United States dismissed count four, *see* Doc. 136; Doc. 137 at 1. The district court sentenced Johnson to 135 months' imprisonment for counts one, three, and six; 120 months' imprisonment for count two, to be served consecutively to counts one, three, and six; and life imprisonment for count five, to be served consecutively to counts one, two, three, and six. Doc. 136; Doc. 137 at 2. This Court affirmed Johnson's direct appeal from the judgment. *United States v. Johnson*, 134 F. App'x 284 (11th Cir. 2005).

In 2006, Johnson unsuccessfully challenged his sentence by filing a pro se motion under 28 U.S.C. § 2255. *See* Docs. 159, 161. He appealed the order denying his § 2255 motion, Doc. 162, but this Court denied a certificate of appealability, *see* Case No. 07-14866. In 2020, he moved, pro se, for compassionate release under 18 U.S.C. § 3582. Doc. 174. The district court denied that motion, too. Doc. 180.

In July 2024, Johnson, proceeding pro se, again moved for compassionate release. Doc. 183. The United States opposed release, Doc.

2

186, and the district court again denied his motion, Doc. 196, as described below. This appeal followed. Doc. 197.

### *Statement of the Facts*

#### A.    Offense Conduct

In June 2002, Johnson and his co-defendant Eddie Cavanaugh stole approximately $66,500 from the Royal Palm Bank in Naples. Doc. 187-1, Presentence Investigation Report ("PSR"), ¶¶ 30–31. Johnson had entered the bank with a handgun, while Cavanaugh waited outside in their getaway vehicle. *Id.* ¶ 31. Once inside, Johnson told the bank employees that he would kill them if authorities responded. *Id.* ¶ 32. He also threatened to shoot a bank teller if she gave him dye packs. *Id.* As she handed him the money, Johnson's gun went off, shooting her in the leg. *Id.* Johnson told her he didn't mean to hurt her and fled with the money. *Id.* The teller was later treated at the hospital for her gunshot wound. *Id.* ¶ 33.

Several months later, on February 19, 2003, an employee heard a loud noise outside a Walgreens pharmacy in Collier County, Florida. Doc. 147 at 176–77. She walked outside to see what had happened but observed nothing out of the ordinary. Doc. 147 at 177. Shortly thereafter, authorities arrived at the pharmacy and discovered a pipe bomb had exploded under a vehicle in the parking lot. Doc. 147 at 178, 181–83, 222–30. Johnson and Cavanaugh had

3

built, placed, and detonated the bomb. Doc. 148 at 508–10; Doc. 149 at 546, 553, 558–59. Later that afternoon, authorities found three more pipe bombs that Johnson and Cavanaugh had placed near large propane tanks behind a Publix supermarket. Doc. 147 at 186–88, 196. One bomb had been detonated before authorities could disarm it. Doc. 147 at 208–12; Doc. 148 at 429.

Meanwhile, after detonating the pipe bombs, Johnson and Cavanaugh proceeded to a nearby AmSouth Bank. Doc. 148 at 514. Cavanaugh entered the bank and requested a meeting with a branch manager, ostensibly to discuss a home loan. Doc. 148 at 307–10, 332, 334–35, 348, 502, 514–16. Upon reaching her office, however, Cavanaugh closed the office door, stated that he intended to rob the bank, and demanded access to the bank vault. Doc. 148 at 310, 502, 518–19. Cavanaugh also told the branch manager that he had placed a bomb in her office and that his accomplice would detonate that bomb if she did not cooperate. Doc. 148 at 311, 332–33.

While Cavanaugh was meeting with the branch manager, Johnson entered the bank, displayed a gun to a teller, and ordered her and another teller to lie on the floor facedown, after which he strapped their hands behind their backs. Doc. 148 at 335–36, 341, 348, 350, 355, 515. Because the teller drawers were kept locked, Johnson subsequently released the tellers and demanded that they unlock the drawers and give him the currency inside; they complied. Doc.

4

148 at 337–39, 348. With a teller's assistance, Johnson also took currency from the drawer of the head teller, who at the time was at lunch. Doc. 148 at 341.

When the branch manager exited her office with Cavanaugh, she observed a bank customer and bank employee lying in front of the teller line. Doc. 148 at 312. She and Cavanaugh then went behind the teller line, where the branch manager noticed a teller face down on the floor with her hands and feet bound as Johnson emptied a money drawer into a duffel bag. Doc. 148 at 312–14. After assisting a customer at the bank's drive-through (while Johnson crouched down behind the counter pointing a gun at her), the branch manager proceeded to the vault. Doc. 148 at 314–19.

Because the branch manager was having difficulty opening the key box where the vault combinations were stored, Johnson released one of the tellers, who then assisted the branch manager. Doc. 148 at 319. They ultimately were able to open the bank's "working supply vault." Doc. 148 at 324–25, 343, 356. Rather than waiting to try to access the bank's second "reserve vault," however, Johnson and Cavanaugh fled with the currency from the bank's working vault, together with the currency Johnson had taken from the teller drawers, which totaled approximately $42,000. Doc. 148 at 325–26, 342–43, 346, 356–58, 385. Bank employees then alerted the authorities. Doc. 148 at 301–03, 327–28, 371.

5

Cavanaugh and Johnson fled the bank in a car driven by Cavanaugh. PSR ¶ 19. When authorities started pursuing them, Cavanaugh sped up and drove onto the highway. *Id.* They later exited the highway and drove through a residential neighborhood at excessive speeds. *Id.* Shortly thereafter, authorities apprehended Johnson and Cavanaugh. Doc. 148 at 329–30, 408–09, 417–18, 421–22, 524–25. Authorities searched their car and found two firearms. PSR ¶ 21. Cavanaugh told authorities that while they were fleeing, Johnson had suggested shooting other cars to cause accidents and divert the authorities. *Id.* ¶ 23.

**B.    Sentencing**

For counts one, three, and six, Johnson had a guidelines range of 108 to 135 months' imprisonment based on a total offense level of 30 and a criminal-history category of II. PSR ¶¶ 80, 85, 109. For count two, Johnson faced a mandatory minimum term of ten years' imprisonment under 18 U.S.C. § 924(c)(1)(A)(iii), to be served consecutively to his sentences on the other counts. *Id.* ¶ 109. And for count five, Johnson faced a mandatory term of life imprisonment under the then-applicable version of § 924(c)(1)(C)(ii), to be served consecutively to his sentences on the other counts. *Id.* The district court sentenced Johnson to 135 months' imprisonment for counts one, three, and six; 120 months' imprisonment for count two, to be served consecutively to

counts one, three, and six; and life imprisonment for count five, to be served consecutively to counts one, two, three, and six. Doc. 136; Doc. 137 at 2.

In 2018, Congress amended § 924(c) under the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Prior to the First Step Act, § 924(c) contained a "stacking" provision where, in the case of a second or subsequent conviction under § 924(c)—and if the firearm was a machinegun or destructive device—a defendant was to be "sentenced to imprisonment for life." § 924(c)(1)(C)(ii) (2004). Section 403(a) of the First Step Act amended this language so that the lifetime term of imprisonment on a second § 924(c) violation involving a machinegun or destructive device applies only if the first § 924(c) conviction has become final. But § 403(b) stated that the amendments were not retroactive.

Because of the First Step Act's Amendment to § 924(c), if Johnson were sentenced today, he would be subject to a 40-year mandatory minimum sentence for his two § 924(c) convictions—10 years for the first and 30 years for the second—which is less than the lifetime mandatory sentence he received on count five, his second § 924(c) conviction. *See* § 924(c)(1)(B)(ii).

## C.    Johnson's Most Recent Compassionate-Release Motion

In his July 2024 motion, Johnson argued that his unusually long sentence of life imprisonment for count five constituted an "extraordinary and

compelling" circumstance for compassionate release under USSG §1B1.13(b)(6). Doc. 183 at 5–7. He relied on the First Step Act's nonretroactive amendment to the mandatory minimums prescribed by § 924(c), stating that his second § 924(c) conviction would today require only a 30-year mandatory minimum sentence. *Id.* at 5. He argued that "[a] life sentence is grossly disparate to 30 years and, thus, also 'unusual' by current standards." *Id.* He also asked the court to consider his individualized circumstances, including his poor health and age—66 at the time of his motion. *Id.* at 6. He alleged that these circumstances show he is no longer a danger to the public. *Id.* Finally, he argued that his detonation of pipe bombs—while "dumb"—was not done "with malice" or an intent to hurt anyone, which he claimed separated his case from the typical bombing case. *Id.* at 7. He asked the court to reduce his sentence to 40 years or time served. *Id.* at 6.

The United States opposed Johnson's motion. Doc. 186. It first argued that a nonretroactive change in law is not an extraordinary and compelling reason for release. *Id.* at 12–27. Specifically, it argued that §1B1.13(b)(6) is invalid because it is an unreasonable interpretation by the Sentencing Commission of § 3582(c)(1)(A)'s requirement for "extraordinary and compelling" reasons for compassionate release. *Id.* Alternatively, it argued that even if §1B1.13(b)(6) is valid, Johnson had failed to show an extraordinary and

8

compelling reason for release because the difference between a 51-year sentence—the lowest sentence Johnson would have received if he were sentenced under the current version of § 924(c) (comprising of 40 years for the § 924(c) counts consecutive to the 135 months he received for the bank robberies)—and his current life sentence is not grossly disparate. *Id.* at 27–28. Finally, the United States argued that the 18 U.S.C. § 3553(a) factors strongly weighed against release. *Id.* at 30–33.

Johnson replied to the United States' response, Doc. 195, and the district court denied Johnson's motion, Doc. 196. The court first rejected the United States' argument that the Sentencing Commission exceeded its authority by enacting §1B1.13(b)(6), determining that "the amendment to 1B1.13 was within the Commission's power." *Id.* at 6–7. The court next found that Johnson's term of life in prison is an unusually long sentence and that a gross disparity exists between that sentence and the sentence he would have received under the current version of § 924(c). *Id.* at 11. But, relying on case law holding that "a nonretroactive amendment is not itself an extraordinary and compelling reason to reduce a sentence because to do so would thwart the intent of Congress," the court found that the length of Johnson's sentence "alone" did not constitute an extraordinary and compelling reason for a reduction. *Id.* at 11–12.

And although Johnson did not rely on his medical circumstances as an extraordinary and compelling reason for release, the court noted that Johnson has "a history of hypertension but no history of heart attack or stroke" and has had "some rectal bleeding over the last several months" and "some lower extremity neuropathy." *Id.* at 12. The court found that his condition "does not impair his physical or cognitive abilities as he is ambulatory" and "understands the plan of care." *Id.* The court thus found that Johnson was not eligible for release based on his medical condition. *Id.* at 13.

The court also found that Johnson "remains a danger to the community." Doc. 196 at 13–17, 19. It considered the nature and circumstances of his offenses, including his violent bank robberies and detonation of pipe bombs. *Id.* at 14–16. And it considered Cavanaugh's statements to authorities that Johnson had suggested shooting at other cars as they were fleeing from police. *Id.* at 15. It also considered mitigating factors, including his completion of rehabilitative programing, his limited disciplinary history, and his supportive family. *Id.* at 16–17. But it ultimately found that "the nature and circumstances of the armed robberies" showed that Johnson remained a danger to the community. *Id.* at 17, 19. So it denied Johnson's motion on this basis as well. *Id.* at 19.

### *Standard of Review*

This Court reviews de novo whether a defendant is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *United States v. Giron*, 15 F.4th 1343, 1345 (11th Cir. 2021). "After eligibility is established, [this Court] review[s] a district court's denial of a prisoner's § 3582(c)(1)(A) motion for abuse of discretion." *Id.* A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making its determination, or makes findings of fact that are clearly erroneous. *Id.*

### Summary of the Argument

The district court did not abuse its discretion in denying Johnson's 18 U.S.C. § 3582(c)(1)(A) motion for compassionate release based on its finding that Johnson remains a danger to the community. In making this determination, the court properly considered the 18 U.S.C. § 3142(g) factors, including the nature and circumstances of his offenses. That the court gave more weight to the nature and circumstances of Johnson's violent offenses, rather than Johnson's mitigating factors, does not show that the court abused its discretion. Nor did the court abuse its discretion by not considering Johnson's medical condition as a mitigating factor weighing against its finding of dangerousness, because it had determined that Johnson's medical condition did not affect his physical or cognitive abilities. And the court was not required

11

to speculate about Johnson's physical condition several years from now when he turns 79, because Johnson asked the court to reduce his sentence to time served. This Court should affirm the district court's denial of Johnson's motion for compassionate release on this basis alone.

But in any event, Johnson also failed to show extraordinary and compelling circumstances that warranted his release. Section 1B1.13(b)(6)'s "Unusually Long Sentence" provision on which Johnson relied exceeds the bounds of the Sentencing Commission's delegated authority and is therefore invalid. Indeed, Congress's decision not to retroactively apply a statutory change in sentencing law is neither a "extraordinary" nor "compelling" reason for compassionate release under section 3582(c)(1)(A). Section 1B1.13(b)(6)'s contrary interpretation is unreasonable and must be set aside. This Court should affirm on this basis, too.

## Argument and Citations of Authority

### The district court did not abuse its discretion in denying Johnson's 18 U.S.C. § 3582(c)(1)(A) motion for compassionate release.

The district court did not abuse its discretion by denying Johnson's 18 U.S.C. § 3582(c)(1)(A) motion for compassionate release after determining that Johnson remains a danger to the community. It also correctly determined that Johnson was ineligible for a sentence reduction. This Court should affirm.

12

A district court may not modify a term of imprisonment after imposing it, except in a few, limited circumstances. *See* 18 U.S.C. § 3582(c). One of those limited circumstances is known as "compassionate release," as set forth in 18 U.S.C. § 3582(c)(1)(A). *See, e.g.*, *United States v. Harris,* 989 F.3d 908, 909 (11th Cir. 2021).

Section 3582(c)(1)(A) provides that a district court may, after considering the § 3553(a) factors,[1] reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). To that end, Congress expressly delegated to the Sentencing Commission the authority to define what constitutes "extraordinary and compelling reasons" that might merit

---

[1]The § 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

13

compassionate release. *See* 28 U.S.C. § 994(t).

Under that authority, the Sentencing Commission issued a policy statement identifying the circumstances that may qualify as "extraordinary and compelling reasons" for § 3582(c)(1)(A) relief. *See* USSG §1B1.13. Those include certain medical or family circumstances, the defendant's age, the defendant's status as a victim of particular types of abuse, and other circumstances that are similar in gravity. USSG §1B1.13(b)(1)–(5). The final circumstance that the policy statement listed is:

> (6)     Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSG §1B1.13(b)(6). This Court has held that §1B1.13's definition of "extraordinary and compelling reasons" is binding on district courts as they consider compassionate-release motions. *United States v. Bryant*, 996 F.3d 1243, 1251–52 (11th Cir. 2021). Therefore, a district court may not reduce a prisoner's sentence unless a reduction would be consistent with §1B1.13's "extraordinary and compelling reasons" definition. *See id.* at 1262.

And, even if a district court finds that "extraordinary and compelling

14

reasons" for compassionate release exist, § 3582(c)(1)(A) further requires the court to consider the sentencing factors in § 3553(a) and to determine whether the defendant is a danger to the community. *See* § 3582(c)(1)(A) (requiring that district court consider "the factors set forth in section 3553(a) to the extent that they are applicable" when deciding whether to grant a sentence-reduction motion); *see also* USSG §1B1.13(a)(2) (providing that a defendant is not eligible for a discretionary sentence reduction unless district court determines that he "is not a danger to the safety of any other person or to the community").

So a district court may not grant compassionate release unless it makes three findings: "first, that an extraordinary and compelling reason exists; second, that a sentencing reduction would be consistent with U.S.S.G. §1B1.13; and third, that § 3553(a) factors weigh in favor of compassionate release." *United States v. Giron*, 15 F.4th 1343, 1347 (11th Cir. 2021) (footnote omitted). The three findings need not be made in any particular order, *id.*, and "[i]f any one of the necessary findings cannot be made, then compassionate release is not permissible," *id*. at 1348; *See also United States v. Tinker*, 14 F.4th 1234, 1240 (11th Cir. 2021) (holding that "a district court doesn't procedurally err when it denies a request for compassionate release based on § 1B1.13's policy statement without first explicitly determining whether the defendant could present 'extraordinary and compelling reasons'").

**A.    The district court did not abuse its discretion in finding that compassionate release is not warranted because Johnson remains a danger to the community.**

The policy statement applicable to § 3582(c)(1)(A) provides that, in addition to determining whether extraordinary and compelling reasons exist that might warrant a sentence reduction, the district court must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG §1B1.13(a)(2). Under § 3142(g), the district court can consider several factors in determining whether a defendant is a danger to the community, including (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including his past conduct and criminal history; and (4) the nature and seriousness of the danger that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

The district court properly considered the § 3142(g) factors in determining that Johnson would pose a danger to the community if released. Indeed, in making this determination, the district court considered the nature and circumstances of Johnson's offense, including his shooting a bank teller, use of firearms and explosive devices, and threats to kill bank employees. *See* Doc. 196 at 15–16; § 3142(g)(1). The court also noted that according to Cavanaugh, Johnson had suggested shooting at other cars while they were

16

fleeing from authorities after the second armed robbery. *See id.* at 15. And the court considered the weight of the evidence against Johnson, citing to the testimony of witnesses at his trial. *See id.* at 14–16; § 3142(g)(2). The court weighed these factors against mitigating factors, including Johnson's "minimal and non-violent" disciplinary history and supportive family. *See id.* at 16; § 3142(g)(3). The court ultimately found that "the nature and circumstances of the armed robberies" showed that he posed a danger to the community. Doc. 196 at 16. Thus, the district court did not abuse its discretion by denying Johnson's motion based on its determination that he presented a danger to the community. *See* §1B1.13(a)(2); *United States v. Jackson*, 847 F. App'x 792, 796–77 (11th Cir. 2021) (district court did not abuse its discretion in determining that defendant posed a danger to the community after considering the facts related to his offense and his criminal history); *United States v. Bentley*, No. 23-13848, 2024 WL 3311704, at *1 (11th Cir. July 5, 2024) (district court acted within its discretion in finding that defendant posed a continuing danger to the community based on his violent offenses, including armed bank robberies).

Johnson argues that the court abused its discretion by failing to consider his "poor and deteriorating health" and the danger he would pose if he were released at age 79 after serving a 40-year sentence. *See* Johnson's brief at 12–14. But the court, in rejecting Johnson's medical condition as an extraordinary and

compelling reason for release, had determined that Johnson's medical condition "does not impair his physical or cognitive abilities." *See* Doc. 196 at 12. Indeed, the only evidence of Johnson's alleged "poor and deteriorating health" was his history of hypertension and rectal bleeding. *See id.* So the court did not abuse its discretion by concluding that Johnson's physical condition would not mitigate the risks of releasing him from prison. *See United States v. Shettler*, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (district court did not abuse its discretion by rejecting defendant's argument that he was no longer a danger to the community). And to the extent that Johnson is arguing that the court should have placed greater weight on his physical condition, his disagreement with how the court balanced the dangerousness factors does not establish an abuse of the court's discretion. *See United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007) (weight given to each factor is a matter committed to sound discretion of the district court); *United States v. Butler*, 852 F. App'x 503, 506 (11th Cir. 2021) (district court, in denying compassionate-release motion based on its finding that defendant posed a danger to the community, did not abuse its discretion by "afford[ing] more weight to [defendant's] criminal history than the court did to other mitigating factors").

Nor did the court abuse its discretion by considering the danger Johnson

18

would pose to the community if he were released today, rather than several years from now. As Johnson acknowledges in his brief at page 12, Johnson had asked the court to reduce his sentence to time served. *See* Doc. 183 at 7 (asking the court to "reduce his sentence … to time served"). That Johnson had alternatively suggested that the court reduce his sentence to 40 years (which would make him 79 at the time of release) does not mean that the court had to speculate about the state of Johnson's physical condition at age 79. If Johnson's physical state deteriorates as he ages to the point that it constitutes an extraordinary and compelling reason for release, he can again move for release at that time. But the court did not abuse its discretion in declining to speculate about Johnson's physical condition several years from now and instead considering only Johnson's physical condition today based on Johnson's request to reduce his sentence to time served and the information it had before it.

The district court did not abuse its discretion in denying Johnson's compassionate-release motion based on its finding that he would pose a danger to the community if released. For that reason alone, this Court should affirm.

**B.    The district court did not err in ruling that Johnson had shown no extraordinary and compelling reason for compassionate release.**

The district court did not err in determining that the (nonretroactive) 2018 amendments to 18 U.S.C. § 924(c) do not constitute an extraordinary and

19

compelling reason warranting a reduction to his sentence. *See* Doc. 196 at 11–12. Johnson is ineligible for relief because §1B1.13(b)(6) is an unreasonable interpretation of § 3582(c)(1)(A)'s requirement for "extraordinary and compelling" reasons for compassionate release and is, therefore, invalid.[2]

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). This delegation of authority, however, "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). Even when reached through an exercise of delegated authority, an agency's unreasonable interpretation of a statute must be set aside. *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997); *see Batterton*, 432 U.S. at 426. As the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *LaBonte*, 520 U.S. at 753, 757.

---

[2]While the district court determined that §1B1.13(b)(6) is a valid exercise of the Sentencing Commission's authority, *see* Doc. 196 at 6–7, this Court "may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *PDVSA US Litig. Tr. v. LukOil Pan Americas LLC*, 65 F.4th 556, 652 (11th Cir.), *cert. denied*, 144 S. Ct. 343 (2023) (quoting *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017)). As we explain, the district court's reasoning—that § 924(c)'s nonretroactive change in the law was not an extraordinary and compelling reason for relief—was correct. But the court should've gone a step further and invalidated §1B1.13(b)(6).

Here, Congress directed the Commission to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). Under §1B1.13(b)(6), a defendant who has received an "unusually long sentence" and has served at least 10 years of his prison term may apply for compassionate release based on a change in the law, but "only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." USSG §1B1.13(b)(6). That section conflicts with § 3582(c)(1)(A)'s plain text and intent. It therefore follows that §1B1.13(b)(6) is invalid. *See LaBonte*, 520 U.S. at 753, 757 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

Section 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). And Congress instructed that any reason sufficient to overcome that general principle must be "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i).

No reasonable interpretation of that phrase's text can encompass

21

nonretroactive or intervening changes in law—particularly given the statute's structure and purpose. The majority of the circuits to have considered the issue have concluded that, as a matter of plain language, an intervening change in the law is neither extraordinary nor compelling. *See United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198–1200 (D.C. Cir. 2022); *see also United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (unpublished).[3] This Court, if it reaches this issue at all, should conclude the same.[4]

Here, Johnson invokes Congress's decision not to extend the First Step Act's amendment to 18 U.S.C. § 924(c) to defendants like him as an

---

[3]Four circuits have held that a change in law can form part of an individualized assessment of whether to grant a sentence reduction, but only in combination with other case-specific factors. *United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2022); *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1097–98 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047–48 (10th Cir. 2021). The Eleventh Circuit has not yet decided the issue.

[4]The Third Circuit recently held that its decision in *Andrews* trumps the Sentencing Commission's amended policy statement in the § 924(c) context. *United States v. Rutherford*, 120 F.4th 360 (3d Cir. 2024).

extraordinary and compelling reason warranting a sentence reduction. *See* Johnson's brief at 7, 9. As explained above, in the First Step Act, Congress amended § 924(c)(1)(C) so that the increased penalties for a second § 924(c) conviction do not apply unless the defendant has a prior § 924(c) conviction that became final before the defendant's current § 924(c) violation. First Step Act of 2018 § 403(a), Pub. L. No. 115-391. But Congress made the deliberate choice not to apply that amendment to defendants who were sentenced before the Act's enactment, specifying that the change applies only "if a sentence for the offense has not been imposed as of such date of enactment." *Id*. § 403(b). In so doing, Congress adhered to "the ordinary practice" in federal sentencing of "apply[ing] new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012); *cf.* 1 U.S.C. § 109 (general nonretroactivity provision).

Given Congress's deliberate choice not to apply the First Step Act's change to § 924(c) to defendants who had already been sentenced, "there is nothing 'extraordinary' about" the fact that Johnson's sentence reflects the statutory penalty that existed at the time he was sentenced. *See Thacker*, 4 F.4th at 574. That sentence "was not only permissible but statutorily required at the time." *See United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring).

Nor does a nonretroactive change to a statutory provision constitute a "compelling" reason for a sentence reduction. When Congress enacted the Sentencing Reform Act of 1984, "[c]ompelling" meant (and still means) "forcing, impelling, driving." *McCall*, 56 F.4th at 1055 (quoting *Webster's* 463). Thus, for a reason to be "compelling" under § 3582(c)(1)(A)(i), it must provide a "forcing, impelling, [or] driving" reason to disturb the finality of a federal sentence. *Id.* (internal quotation marks omitted).

Even beyond the First Step Act's explicit determination not to apply the amendment to § 924(c) retroactively, ordinary principles of nonretroactivity already consider—and reject—the notion that changes in statutory law generally should be applied retroactively. Congress enacts new sentencing statutes against a background principle, codified in 1 U.S.C. § 109, that a criminal statute does not change the penalties "incurred" under an older criminal statute "unless the repealing Act … so expressly provide[s]." The "strong presumption against statutory retroactivity" "is 'deeply rooted in our jurisprudence' and 'embodies a legal doctrine older than our Republic.'" *Jenkins*, 50 F.4th at 1198 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). To treat a nonretroactive change in the law as a "compelling" reason to disturb a final sentence would thus undo the balance already struck

24

by ordinary nonretroactivity principles. Nothing about a nonretroactive change in the law compels such an illogical outcome.

In sum, any disparity between Johnson's sentence and the sentence he would receive today stems from deliberate congressional design: Congress's decision not to apply the First Step Act's change to § 924(c) to defendants who had already been sentenced. As the Supreme Court has recognized, such "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." *Dorsey*, 567 U.S. at 280. And treating Congress's express adherence to "ordinary practice" in federal sentencing, *id.*, "as simultaneously creating an extraordinary and compelling reason for early release" would "sow conflict within the statute," *Andrews*, 12 F.4th at 261; *see also Rutherford*, 120 F.4th at 376 ("Simply put, 'allowing the change to § 924(c) to be considered when determining compassionate release eligibility does not align with 'the specific directives that [Congress]" set forth in the First Step Act.'" (quoting *LaBonte*, 520 U.S. at 757)). Accordingly, a nonretroactive change in the law cannot serve as either an "extraordinary" or a "compelling" reason for a sentence reduction, whether in isolation or as part of a package of such "reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

25

Section 3582(c)(1)(A)(i)'s context reaffirms that the term "extraordinary and compelling" cannot encompass intervening changes in law. Statutory construction is a "holistic endeavor" and a provision "is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988). Other features of § 3582(c)'s scheme confirm that the phrase "extraordinary and compelling reasons" does not encompass changes in law.

Most notably, in the very next paragraph following § 3582(c)(1), Congress expressly addressed the retroactive application of some changes in law, authorizing courts to modify a term of imprisonment where a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see* 28 U.S.C. § 994(u) (directing the Commission to determine when such modifications are appropriate). There would have been no reason for "the same Congress, skeptical of sentence modifications as a general rule," to have "provide[d] for the retroactive application of specific changes in sentencing law in § 3582(c)(2)" had § 3582(c)(1)(A)(i) "already covered all legal developments, retroactive or not." *McCall*, 56 F.4th at 1056. That Congress did not similarly provide the Commission or district courts with authority to revisit sentences in light of statutory amendments or changes in decisional law shows that

26

Congress did not intend for § 3582(c)(1)(A) to reach such changes.

In sum, the Commission's interpretation of § 3582(c)(1)(A) as set forth in the "Unusually Long Sentence" provision in §1B1.13(b)(6) is unreasonable and exceeds the bounds of the Commission's delegated authority, and is therefore invalid.[5] *See LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language"). This Court should therefore affirm the district court's determination that the length of Johnson's sentence alone was not an extraordinary and compelling reason for a reduction to his sentence.

---

[5]In *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), the Supreme Court overturned *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), which had required courts to defer to an agency's "permissible" interpretations of statutes that the agency administered. *See Loper*, 144 S. Ct. at 2254. But *Chevron* deference to the Sentencing Commission's statutory interpretation is not an issue in this case. Even before *Loper* overturned *Chevron*, the doctrine had been limited to *implicit* congressional delegations of interpretive authority. *See Chevron*, 467 U.S. at 843–44. An "express and clear conferral of [interpretive] authority"—as here—has never implicated *Chevron*. *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 286–87 (2016) (Thomas, J., concurring); *see Chevron*, 467 U.S. at 843–44. *Loper* does not alter the deference due when Congress has expressly identified a gap for an agency to fill. *See id; United States v. Mead Corp.*, 533 U.S. 218, 228–29 (2001) (distinguishing express and implicit delegations of authority); *see also Chevron*, 467 U.S. at 843–43, and *Cuozzo*, 579 U.S. at 286–87 (Thomas, J., concurring). In such cases, the Administrative Procedure Act generally provides the relevant standard. *Id*. (citing 5 U.S.C. § 706(2)(A)); *see Chevron*, 467 U.S. at 843–44.

# Conclusion

The United States requests that this Court affirm the order of the district court.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

SEAN SIEKKINEN
Assistant United States Attorney
Appellate Division

By:    *s/ Julia R. Kapusta*
JULIA R. KAPUSTA
Assistant United States Attorney
Appellate Division
Florida Bar No. 1002292
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000
julia.kapusta@usdoj.gov

28

## Certificate of Compliance with Type-Volume Limitation

This brief, which contains 6456 countable words under 11th Cir. R. 32-4, complies with Fed. R. App. P. 32(a)(7)(B).

# Certificate of Service

I certify that a copy of this brief and the notice of electronic filing was sent by United States mail on February 4, 2025, to:

PERRY JOHNSON
Reg. No. 33609-018
FCI Cumberland – Inmate Legal Mail
P.O. Box 1000
Cumberland, MD 21501

*Defendant-appellant, pro se*

s/ *Julia R. Kapusta*
JULIA R. KAPUSTA
Assistant United States Attorney